Leemore Kushner (SBN 221969)
KUSHNER LAW GROUP
801 North Citrus Avenue
Los Angeles, California 90038
Telephone:  (323) 515-7894
Facsimile:  (323) 544-8170
Email: lkushner@kushnerlawgroup.com

Attorneys for Plaintiff Malibu Media, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Malibu Media, LLC, a California corporation,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DEREK LIEU,<br><br>　　　　　Defendant. | Case No. 3:13-cv-00435-LAB-DHB<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTIONS TO DISMISS DEFENDANT'S COUNTERCLAIM FOR DECLARATORY RELIEF AND MOTION TO STRIKE AFFIRMATIVE DEFENSES**<br><br>Date: January 21, 2014<br>Time: 11:45 a.m.<br>Place: Courtroom 14A<br><br>NO ORAL ARGUMENT REQUESTED |

## I. INTRODUCTION[1]

Defendant insinuates throughout his opposition brief that this case is about child pornography. It is not. Every individual in Plaintiff's films is of legal age and Plaintiff takes great care to ensure compliance with all U.S. laws regulating its business. Defendant's attempt to insinuate otherwise is a flagrant distortion of the case and offensive.

Defendant's Answer and Opposition to Plaintiff's Motions rely on the flawed assertion that violations of 18 U.S.C. § 2257 provides a basis to bar a copyright holder from claiming the protections of the Copyright Act. Defendant's argument fails as a matter of law. Indeed, compliance with 2257 is not a prerequisite to obtaining copyright protection and for the Court to hold otherwise would be reversible error. Moreover, Section 2257 has no bearing on Defendant's affirmative defenses and the affirmative defenses regarding IPP and Plaintiff's ability to recover statutory damages are equally erroneous. For the foregoing reasons, as explained more fully below, Plaintiff respectfully requests that this Court grant its Motion to Dismiss and Motion to Strike.

## II. PLAINTIFF'S MOTIONS SHOULD BE GRANTED.

### A. Defendant's Counterclaim Is Redundant.

Defendant's counterclaim is repetitious and unnecessary. Indeed, the "purpose of the Declaratory Judgment Act is 'to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure -- or never.'" *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 (9th Cir. 1990) (citations omitted); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 269 F. Supp. 2d 1213, 1225-

---

[1] Since the issues overlap, Plaintiff provides its reply in support of its Motion to Dismiss Counterclaim (Dkt. 19) and Motion to Strike Affirmative Defenses (Dkt. 20) in this single brief.

26 (C.D. Cal. 2003) ("The Act was intended to afford relief to those victimized by "scarecrow" litigation (i.e., circumstances in which a potential plaintiff immobilizes others with the mere threat of litigation), by allowing district courts to declare the legal relations of affected parties" (parenthetical in original)). "Separately litigating [a] defense in a declaratory posture would not serve the purposes of declaratory relief [and would be contrary to the] strong interests of judicial economy in avoiding needless duplication…." *Id.* at 1226. Since Plaintiff's Complaint and Defendant's Affirmative Defenses already frame and will resolve Defendant's liability, including the applicability of his affirmative defenses – precisely the issue that the counterclaim asks this Court to adjudicate – the counterclaim is redundant and unnecessary, and should be dismissed. *See Malibu Media, LLC v. John Doe*, 13-C-2702, 13-C-8473, Transcript of Proceedings Before the Honorable Milton I. Shadur, (N.D. Ill. Dec. 9, 2013) ("a Counterclaim is not just there to assert the reverse of an answer . . . you can't just mirror a complaint by turning the allegations around."

Section 2257 does not save Defendant's counterclaim. Indeed, Section 2257 does not provide for a private cause of action. Thus, even if Plaintiff violated Section 2257, and it did not, it cannot be held liable to Defendant and, as discussed below, such liability would not absolve Defendant of his infringing acts.

Finally, citing no authority, Defendant argues that "the particular affirmative defenses alleged would be relevant not just in this case, but in hundreds if not thousands of other Malibu Media cases nationwide, and could be tried separately," Defendant's argument is erroneous. Opposition, p. 10. But this litigation is only "concerned with adjudicating the rights of these particular parties." *Malibu Media, LLC v. Doe 1*, 2012 WL 6681990, at *4 (D. Md. 2012). "The Declaratory Judgment Act . . . 'is not intended to provide a forum for establishing the legal relations between declaratory defendants and 'all the world' '; rather, it only permits courts to

clarify or settle 'the legal relations of the parties[.]'" *Id.* (granting Malibu Media's motion to dismiss declaratory relief counterclaim).

### B. Plaintiff's Purported Failure to Maintain Accurate Records Is Not a Defense to Copyright Infringement.

18 U.S.C. § 2257 ("Section 2257") is just one of dozens (if not scores) of record keeping statutes.[2] It requires producers of sexually explicit conduct to keep certain age verification records. Without any factual support, Defendant argues that Plaintiff's records *may* not be in compliance with the record-keeping requirements in Section 2257. From this speculative premise, Defendant erroneously asserts that if Plaintiff is not compliant with Section 2257, then its works are not entitled to copyright protection.[3] But the Copyright Act <u>does not</u> limit copyright protection to only those entities that are in compliance with federal record keeping statutes. Indeed, Section 2257 does not mention the word "copyright" and the Copyright Act does not mention Section 2257. Defendant's attempt to read this prerequisite into the Copyright Act's express definition of what is copyrightable is contrary to the basic tenet that Courts "resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29, 118 S. Ct. 285, 290 (1997); *see also e.g. Aronsen v. Crown Zellerbach*, 662 F.2d 584, 590 (9th Cir. 1981) ("It is . . .[a] general principle of statutory construction that a court should not add language to an unambiguous statute. . . ."); *U.S. v. Parise*, 159 F.3d 790, 800

---

[2] For example, the Equal Employment Opportunity Commission requires "that employers keep all personnel or employment records for one year." *See* http://www.eeoc.gov/employers/recordkeeping.cfm. The Internal Revenue Code states that "[e]very person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe." 26 U.S.C. § 6001.

[3] Defendant does not allege that Plaintiff's copyrighted works actually depict child pornography, nor can he make any such allegation consistent with Rule 11.

(3d Cir. 1998) ("Courts should not legislate by reading into the laws provisions not included by the legislature."); *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 374 (5th Cir. 2009) ("Under well-settled principles, courts must refrain from reading additional terms . . . into these sections.").

Thus, even if Plaintiff's 2257 records are noncompliant – **and they are not** – Plaintiff's copyrights are valid and enforceable.  Just as the Court would find that a plaintiff's failure to maintain employment tax records in compliance with IRS standards is *not* a defense to copyright infringement, so too must this Court find that a purported failure to maintain accurate 2257 records is *not* a defense to infringement.  In short, Defendant's purported "2257 defense" is not a legally cognizable defense and fails as a matter of law.

### C. The Copyright Act's Broad Application Makes Clear That It Applies Even If The Copyright Holder Is Purportedly Not In Compliance With An Unrelated Federal Law.

"No works are excluded from copyright by reason of their content." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 2.17 (2008), *citing Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) ("*Mitchell Brothers*").  Sound policy reasons support the "[c[ongressional intent to avoid content restrictions on copyrightability." *Id*. at § 2.17.  In *Belcher v. Tarbox*, 486 F.2d 1087, 1088 (9th Cir. 1973), the Ninth Circuit rejected the argument that false and fraudulent text is not copyrightable: "[t]here is nothing in the Copyright Act to suggest that the courts are to pass upon the truth or falsity, the soundness or unsoundness, of the views embodied in a copyrighted work. The gravity and immensity of the problems, theological, philosophical, economic and scientific that would confront a court if this view were adopted are staggering to contemplate." *Id.*

Likewise, in *Mitchell Brothers*, *supra*, accused infringers of a pornographic film asserted as an affirmative defense that the copyrighted material violated obscenity law and was therefore not copyrightable, and that, as a result, plaintiffs were barred from recovering for an infringement of their work under the doctrine of "unclean hands." *Mitchell Brothers*, 604 F.2d at 854. The trial court accepted the affirmative defense, but the Fifth Circuit reversed, holding there is not even a hint in the Copyright Act that the obscene nature of a work makes it less copyrightable:

> [The Copyright Act's]… statutory language 'all the writings of an author' is facially all-inclusive, within itself admitting of no exceptions. There is not even a hint in the language of s. 4 that the obscene nature of a work renders it any less a copyrightable 'writing.' There is no other statutory language from which it can be inferred that Congress intended that obscene materials could not be copyrighted.

*Id.* (footnote omitted).

The *Mitchell Brothers* Court then noted that the historical absence of any content-based restrictions in copyright law demonstrated that "Congress has seldom added restrictions on copyright based on the subject matter of the work, and in each instance has later removed the content restriction." *Id.* at 855. Such congressional "additions and subsequent deletions," "suggest that Congress has been hostile to content-based restrictions on copyrightability." *Id.*; *see also, Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 991 (9th Cir. 2009) ("[t]he *Mitchell/Belcher* principle leads to the conclusion that illegal operation of a copyrightable work neither deprives the work of copyright protection nor precludes generally available remedies.")

Three years later in *Jartech, Inc. v. Clancy*, 666 F.2d 403 (9th Cir. 1982) ("*Jartech*"), the Ninth Circuit also rejected the argument that obscene works are not entitled to copyright protection. There, the plaintiff alleged that the defendants

violated the plaintiff's copyrights in a sexually explicit film by surreptitiously photographing images of a video as it played in the theater and tape recording the entire soundtrack of the film. *Id.*, at 405. The *Jartech* decision elucidated an additional, pragmatic reason to avoid an obscenity defense to copyright infringement:

> Pragmatism further compels a rejection of an obscenity defense. Under the dictates of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), obscenity is a community standard which may vary to the extent that controls thereof may be dropped by a state altogether . . . Acceptance of an obscenity defense would fragment copyright enforcement, protecting registered materials in a certain community, while, in effect, authorizing pirating in another locale.

*Jartech*, 666 F.2d at 406; *see also, Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012) ("even illegality is not a bar to copyrightability"); *Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191, 198 (N.D. Ill. 2013) (same, citing *Flava Works*); *United States v. Arndt*, 2010 WL 384890, at *5 (W.D. Mo. 2010) (accepting defendant's argument that the alleged child pornography on his computer may be copyrightable).

The above facts and law clearly demonstrate that there is no content-based restriction on which works may obtain copyright protection. The Copyright Act sweeps broadly and affords protection regardless of content or use, even if illegal. In light of the foregoing, it is clear that the legislature did not intend for those protections to be denied based on an assertion of purported noncompliance with another unrelated federal law.

### D. Defendant's 2257 Argument Has No Bearing on an Unclean Hands or Copyright Misuse Defense

There is no authority supporting the assertion that "if Malibu has unlawfully

6

PLAINTIFF'S REPLY ISO MOTIONS TO DISMISS AND STRIKE

produced the copyrighted works at issue, then the court is within its discretion to allow an equitable, judicial defense to infringement based on Malibu's alleged wrongdoing." Opposition, p. 21. Indeed, as discussed above, the Copyright Act does not exclude works from copyright protection on the basis that the copyright holder failed to comply with the record-keeping provisions of Section 2257, and the Court may not read words or elements into a statute that do not appear on its face. *Bates*, , 522 U.S. at 29.  Accordingly, Section 2257 is not a sufficient basis to defend against Plaintiff's claim, and the Court should strike the affirmative defenses which rely on it and dismiss Defendant's Counterclaim seeking to have those affirmative defenses declared valid.

The Ninth Circuit in *Dream Games*, *supra*, cited *Mitchell Bros.* for the proposition that "unclean hands is not applied where plaintiff's misconduct is not directly related to the merits of the controversy between the parties, but only where the wrongful acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." *Dream Games*, 561 F.3d at 990 (9th Cir. 2009).  The court further stated that "[t]he alleged wrongdoing of the plaintiff does not bar relief unless the defendant can show that he has personally been injured by the plaintiff's conduct." *Id.*

Here, Defendant's purported Section 2257 defense, which forms the basis for his unclean hands affirmative defense, does not relate to the "merits of the controversy between the parties" and has not affected "the equitable relations between the parties in respect of something brought before the court for adjudication." *Id.*  Plaintiff's Section 2257 records have no bearing on the determination of whether or not Defendant is liable to Plaintiff for infringement of its copyrighted works through the BitTorrent file sharing protocol.  Neither are Plaintiff's Section 2257 records before the court for adjudication since, as Defendant correctly recognizes, there is no private cause of action under Section 2257.  Finally,

1  Defendant has not alleged, and cannot show, that he has been personally injured by
2  Plaintiff's purported wrongful conduct.
3       As to Defendant's copyright misuse affirmative defense, Defendant argues
4  that "the kind of artistic expression intended to be incentivized under the Copyright
5  Act does not extend to promoting child pornography.  Nor would such 'speech' be
6  protected under the First Amendment."  Opposition, p. 23.  First, Plaintiff's
7  copyrighted films are _not_ child pornography and, as pointed out above, Defendant
8  has not alleged that they are since he cannot do so and still comply with Fed. R. Civ.
9  P. 11.  Second, Defendant entirely ignores Plaintiff's argument and citation to Ninth
10 Circuit precedent which holds that "[t]he misuse defense prevents copyright holders
11 from leveraging their limited monopoly to allow them to control areas outside the
12 monopoly."  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir.
13 2001).  A violation of 18 U.S.C. § 2257 is not an attempt to control areas outside of
14 the limited monopoly granted by a copyright.  It is also not "us[ing] [a copyright] in
15 a manner violative of the public policy embodied in the grant of a copyright," since
16 Section 2257 has nothing to do with how a copyrighted work is being used.
17 Opposition, p. 23.  Thus, Defendant's insufficient copyright misuse and unclean
18 hands affirmative defenses fail as a matter of law.

19     **E.  The "One Satisfaction Rule" Is Not An Affirmative Defense.**

20      Defendant's opposition concedes that the "One Satisfaction Rule" is _not_ an
21 affirmative defense and inappropriate at this stage of the pleadings.  *See* Opposition,
22 p. 24 ("defendants would contend, it is premature to get into the merits of how the
23 one satisfaction rule should be adapted to the era of a BitTorrent 'swarm' at this
24 stage of the case.").  Likewise, it cannot possibly be construed as a counterclaim.
25 Instead of arguing the merits of the "One Satisfaction Rule," Defendant allows only
26 for a "preview" of his argument.  This "preview" does not support a legal basis for
27 an affirmative defense or counterclaim and, instead, misinterprets the law.  The
28

plain language of the Copyright Act limits any cap on damages to only an actual judgment award "in the action". *See* 17 U.S.C. § 504(c)(1). Therefore, Plaintiff's settlements from other cases are not relevant to this case.

Further, Plaintiff's settlement amounts are not relevant because a confidential settlement is not an "award of damages". *See Malibu Media, LLC v. Batz*, 12-cv-01953, CM/ECF 120 *5 (D. Colo April 5, 13) ("[Defendant's] argument that Plaintiff's alleged settlements with other defendants precludes recovery of statutory damages severely misreads the statute. Because Plaintiff has not received any award for actual damages in this action, 17 U.S.C. § 504(c)(1) does not bar Plaintiff from pursuing its claim for statutory damages"); *see also* AWARD, Black's Law Dictionary (9th ed. 2009) ("**award,** *n.* (14c) A final judgment or decision, esp. one by an arbitrator or by a jury assessing damages"). Accordingly, Defendant's "One Satisfaction Rule" affirmative defense and counterclaim should be stricken and dismissed.

### F. Defendant Failed to Plead Estoppel and Implied License.

The Court should strike Defendant's affirmative defenses of estoppel and implied license because Defendant has failed to plead the necessary elements. *See* Motion to Strike Affirmative Defenses, pp. 4-5 (citing the Ninth Circuit elements for each defense). Defendant did not plead estoppel because Defendant has not, and cannot, allege that Malibu *knew* of the alleged "honey pot" and *intended* to induce him to rely on such action to his detriment. Indeed, Defendant admits in his opposition that he does not have any evidence that the "honey pot" even existed. Opposition, p. 24 ("Defendants will undoubtedly be following up on the whole Guardaley episode in Germany, but see no reason to put discovery on hold to re-plead the facts related to that incident"); *see also id*. at p. 13 ("although defendants are *not yet clear* on the specifics, there are documents, in German, about the proceedings") (not attaching any documents) (emphasis added). For the same

reason, Defendant has not pled the elements of an implied license and cannot do so on a good faith basis. "If a defendant cannot articulate the reasons that affirmative defenses apply to a dispute, it is costly, wasteful, and unnecessary to force plaintiffs to conduct discovery into those defenses." *Dodson v. Strategic Restaurants Acquisition Co. II, LLC*, 289 F.R.D. 595, 602 (E.D. Cal. 2013).

Plaintiff does not allow users to seed its works on BitTorrent. This is antithetical to the work Plaintiff does. Plaintiff should not be required to incur unnecessary expenses litigating such frivolous defenses.

### G. **Defendant's Remaining Affirmative Defenses Should be Stricken.**

Defendant provides no argument as to why his "failure to mitigate damages" and "failure to join an indispensable party" affirmative defenses should not be stricken. To the contrary, Defendant acknowledges that striking those defenses is proper. *See* Opposition, p. 26 ("With the possible exception of failure to mitigate and failure to join an indispensable party, none of the affirmative defenses should be stricken.") Defendant attempts to argue that his failure to mitigate affirmative defense should remain because Plaintiff has not yet made "its election of statutory damages final." *Id*. However, Plaintiff has only pled statutory damages in its Complaint so its election is, in fact, final. *See* First Amended Complaint, Prayer ¶ D. And, Defendant admits that Plaintiff is correct with regard to Defendant's failure to join an indispensable party defense. The initial seeder is not indispensable to this case for the reasons explained in Plaintiff's Motion. Accordingly, Defendant's affirmative defenses should be stricken.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant Plaintiff's Motion to Strike and Motion to Dismiss.

DATED: January 14, 2013        KUSHNER LAW GROUP


                    By:      /s/ Leemore L. Kushner
                             Leemore L. Kushner
                             Attorneys for Plaintiff Malibu Media, LLC

PLAINTIFF'S REPLY ISO MOTIONS TO DISMISS AND STRIKE

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Electronic Service List for this Case.

DATED: January 14, 2013              KUSHNER LAW GROUP

                                     By:      /s/ Leemore L. Kushner
                                            Leemore L. Kushner
                                            Attorneys for Plaintiff Malibu Media, LLC